UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASON MELENDEZ,

                          Plaintiff,

    -v-                                   No. 16-cv-1497 (RJS)
                                                 OPINION AND ORDER

CITY OF NEW YORK, *et al.*

                          Defendant.

RICHARD J. SULLIVAN, District Judge:

      Plaintiff Jason Melendez brings this action against the City of New York (the "City") and former and current employees of the City's Police Department ("NYPD") and of the New York County District Attorney's Office ("DANY"), alleging claims for malicious prosecution, racial discrimination, intentional infliction of emotional distress, and assorted constitutional violations. Now before the Court is Defendants' motion to dismiss the First Amended Complaint (Doc. No. 12 ("Amended Complaint" or "FAC")) pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 56.) For the reasons set forth below, Defendants' motion is granted.

I. BACKGROUND

A. Facts[1]

      Plaintiff, a white Hispanic man, alleges that on the night of June 10, 2010 he was returning home after having drinks with co-workers at the antique shipping company where he worked as a shipping clerk. (FAC ¶¶ 8, 21 33.) While waiting for an uptown express subway at Grand Central

---

[1] The following facts are drawn from the Amended Complaint. In ruling on this motion, the Court has also considered Defendants' brief in support of their motion (Doc. No. 57), Plaintiff's opposition brief (Doc. No. 59), Defendants' reply (Doc. No. 64), and the pre-motion letters and pre-motion conference transcript (Doc. Nos. 30, 36, 39, 43, 48, 51, 62).

Terminal, Plaintiff was allegedly approached by two men – Jovan Haulsey and Jordan Lake (the "Assailants") – who attempted to rob him of his smart phone. (*Id.* ¶ 21.) A fight ensued between Plaintiff and the Assailants, both of whom are black men. (*Id.* ¶ 22.) As the fight progressed, Plaintiff removed his employer-issued box cutter from his pocket to defend himself. (*Id.* ¶ 23.) By the end of the fight – which was partially captured on video and audio recordings – Plaintiff was overpowered, lost consciousness, and suffered a severe facial laceration; one or both of the Assailants also sustained slashing wounds. (*Id.* ¶¶ 23, 24.) When Plaintiff regained consciousness, he was taken to the hospital, where he was interviewed by Defendants Lieutenant Keith Singer and Detective Alexander Sepulveda of the NYPD. (*Id.* ¶¶ 25, 31, 33.) Singer later drafted a report, memorializing Plaintiff's account of the Grand Central fight; in his report Singer expressed doubt about Plaintiff's claim that the fight began with an attempted robbery. (*Id.* ¶ 35.)

Meanwhile, the Assailants, who were also hospitalized, were arrested for their role in the assault. (*Id.* ¶ 26.) While Lake took responsibility for slashing Plaintiff's face, both Lake and Haulsey denied that they had tried to steal Plaintiff's phone and maintained that they acted in self-defense after Plaintiff initiated the conflict and pulled out a knife. (*Id.*) Although the Assailants were subsequently indicted and eventually pleaded guilty to assault and attempted assault charges (*id.* ¶ 54), Defendant Assistant District Attorney ("ADA") Judith Lewis later convened a New York County Grand Jury to assess whether Plaintiff should be charged with assault and attempted assault based on the cross-complaint made by the Assailants. (*Id.* ¶¶ 29, 55.) On August 13, 2010, the grand jury did in fact indict Plaintiff and a warrant was issued for Plaintiff's arrest, though it was never served. (*Id.* ¶ 55, 56.) Indeed, Plaintiff alleges that he never received any notice whatsoever from DANY or the NYPD that he had been indicted and that a warrant had been issued for his arrest. (*Id.* ¶ 79.)

Nevertheless, in the ensuing months and years, Plaintiff endured several brief detentions by law enforcement as a result of his arrest warrant. For example, in January 2011, police officers conducted a traffic stop and informed Plaintiff that his name was associated with an arrest warrant, though they provided no additional information. (*Id.* ¶ 59.) Eight months later, in September 2011, police officers searched Plaintiff's backpack, seized box cutters, and arrested Plaintiff, and although Plaintiff pleaded guilty to disorderly conduct and was released on his own recognizance, he was detained an additional day as a result of the assault warrant. (*Id.* ¶¶ 60–64.) Similarly, when Plaintiff returned to New York City from an international trip in March 2013, Transportation Security Administration officers at the airport detained Plaintiff for more than ninety minutes as a result of the outstanding arrest warrant. (*Id.* ¶ 67.) Finally, on June 27, 2013, Plaintiff was stopped by a New York State Trooper, who informed Plaintiff that he was the subject of an outstanding arrest warrant and detained Plaintiff for several hours at the state police barracks. (*Id.* ¶ 69.) Plaintiff was thereafter transported to the Bronx, where he was held overnight before finally being arraigned in New York State Supreme Court, New York County on the arrest warrant for the alleged Grand Central assault. (*Id.* ¶ 70.) Plaintiff was detained for five days before he was finally released on his own recognizance on July 2, 2013. (*Id.* ¶¶ 76, 77.) Thereafter, Plaintiff was forced to make numerous court appearances in his case before the indictment was finally dismissed on September 18, 2014 as a result of a speedy trial violation. (*Id.* ¶¶ 76, 78; *see also* N.Y. Crim. Proc. Law § 30.30.)

B. Procedural History

Plaintiff commenced this action by filing an initial complaint on February 26, 2016 (Doc. No. 1.) In April, Plaintiff amended his complaint, asserting claims for malicious prosecution and

3

other constitutional violations pursuant to 42 U.S.C. § 1983,[2] racial discrimination pursuant to 42 U.S.C. § 1981, conspiracy to deprive Plaintiff of constitutional rights pursuant to 42 U.S.C. §§ 1983 and 1985, and malicious prosecution and intentional infliction of emotional distress under New York state law. The Amended Complaint names NYPD Lieutenant Singer and Officer Sepulveda along with their supervisors, Chief Raymond Diaz and Captain Donohue (collectively, the "NYPD Defendants"), and Assistant District Attorneys Lewis, Alyssa Gunther, and William Mahoney, the latter two overseeing the prosecution of Plaintiff's case in New York County after Lewis procured the indictment (collectively, the "DANY Defendants," and with the NYPD Defendants, the "Individual Defendants"). Plaintiff also asserts claims against the City for failure to supervise the NYPD and DANY pursuant to 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and for respondeat superior under New York state law. Among other things, Plaintiff argues that he was denied notice and an opportunity to testify before the grand jury before it returned an indictment, which resulted in his multiple detentions and his wrongful prosecution.

On June 22, 2016, the DANY Defendants submitted a letter motion arguing that the claims against them should be dismissed because their conduct was protected by absolute prosecutorial immunity. (Doc. No. 42; *see also* Doc. No. 52.) On September 9, 2016, the NYPD Defendants and the City filed their motion to dismiss pursuant to Rule 12(b)(6), arguing that Plaintiff had failed to state a claim with regard to every claim for relief. (Doc. Nos. 56, 57.) Plaintiff responded to both sets of motions on September 28, 2016 (Doc. Nos. 58, 59), and the motions were fully briefed as of October 11, 2016 (*See* Doc. No. 64).

---

[2] Specifically, Plaintiff alleges violations of the First Amendment's Free Speech Clause, the Fourth Amendment's Search and Seizure Clause, the Fifth and Fourteenth Amendments' Due Process Clause and Equal Protection component/Clause, the Sixth Amendment's right to counsel, and the Ninth Amendment. (FAC ¶ 134.)

## II. LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

## III. DISCUSSION

### A. Federal Claims

Plaintiff asserts federal claims for constitutional violations pursuant to Section 1983, racial discrimination pursuant to Section 1981, conspiracy to commit constitutional violations pursuant to Sections 1983 and 1985, and *Monell* claims for municipal liability. Each of these claims, with the exception of the *Monell* claims, is asserted against all Defendants. The Court considers each

claim in turn, beginning with the DANY Defendants, proceeding to the NYPD Defendants, and concluding with the municipal liability claims against the City.

1. DANY Defendants

Despite bringing suit against the three DANY ADAs, Plaintiff concedes that the DANY Defendants are shielded by absolute immunity because all alleged actions were taken in furtherance of their core prosecutorial advocacy function. (Doc. No. 59 at 24.) *See also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."); *Warney v. Monroe Cty.*, 587 F.3d 113, 120–22 (2d Cir. 2009). As a result, Plaintiff has withdrawn "the complaint against all prosecutors." (Doc. No. 59 at 24.) Accordingly, the claims asserted against the DANY Defendants are dismissed.

2. NYPD Defendants

a. Section 1983 Claims

"To state a claim under [Section] 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). It is "well-settled" Second Circuit law "that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Furthermore, Section 1983 does not countenance respondeat superior or supervisory liability. *See Iqbal*, 556 U.S. at 676. As noted above, the unlawful conduct alleged here includes a claim for malicious

prosecution as well as an undefined set of claims made with reference to five different constitutional amendments. Such claims, whether brought through Section 1983 or state law, are analyzed pursuant to the same standards as the applicable state law tort. *See Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015); *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003). The Court will address each in turn.

i. Malicious Prosecution

For Plaintiff to prevail on his Section 1983 malicious prosecution claim, he "must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Id.* (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)); *see also Broughton v. State of New York*, 37 N.Y.2d 451, 457 (1975).

The NYPD Defendants move to dismiss the malicious prosecution claim, arguing that Plaintiff's own pleadings demonstrate that (1) Defendants were not involved in the initiation or continuation of criminal proceedings against Plaintiff; (2) the prosecution was supported by probable cause, and (3) Defendants did not act with malice. Because Plaintiff has failed to plead that any of the NYPD Defendants were involved in the initiation or continuation of criminal proceedings against Plaintiff, the Court need not consider Defendants' second and third arguments.

While "New York law imposes a presumption that a prosecutor exercises his own independent judgment in deciding to prosecute a criminal defendant," *Gilman v. Marsh &*

7

*McLennan Cos.*, 868 F. Supp. 2d 118, 128 (S.D.N.Y. 2012), police officers can nevertheless be held responsible for "'initiat[ing]' prosecution by filing charges or other accusatory instruments," *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). A police officer may also be responsible for initiating or continuing a prosecution where facts indicate that the officer was heavily involved in the prosecution by, for example, "actively elicit[ing] inculpatory statements" from potentially incredible witnesses, staying in close and regular contact with the prosecutor responsible for the case, and signing a complaint responsible for the prosecution. *See Manganiello*, 612 F.3d at 163. Here, Plaintiff fails to make allegations that could satisfy this standard. First, Plaintiff explicitly pleads that it was ADA Lewis, not one of the NYPD Defendants, who initiated his prosecution by obtaining a grand jury indictment. (*See* FAC ¶ 55.) Second, Plaintiff alleges only minor involvement by the NYPD Defendants in the events leading to his prosecution. Specifically, Plaintiff alleges that Defendants Singer and Sepulveda were responsible for interviewing Plaintiff in the hospital, recording his statement, and memorializing both in a police report (*see id.* ¶¶ 31, 33), which allegedly questioned Plaintiff's account of the events at Grand Central. (*Id.* ¶¶ 35, 36.) The Amended Complaint is even thinner in its treatment of Diaz and Donohue. In fact, Plaintiff's only allegation against Diaz is that he reviewed and approved Singer's report (*id.* ¶ 37), and the Amended Complaint makes no mention of Donohue's involvement whatsoever. Clearly, these allegations – involving the taking of a statement and the drafting of a police report – are insufficient to constitute the requisite personal involvement of Defendants in initiating Plaintiff's prosecution; indeed, there is no allegation that any of the NYPD Defendants were involved in the grand jury proceedings or played a role in executing Plaintiff's arrest. *See, e.g.*, *Levy v. City of New York*, 935 F. Supp. 2d 575, 588–89 (E.D.N.Y. 2013) (stating that even police officer involvement in an *arrest*, without more, is insufficient for a malicious

8

prosecution claim); *Brandon v. City of New York*, 705 F. Supp. 2d 261, 274–75 (S.D.N.Y. 2010) (holding that defendants lacked "requisite personal involvement to be liable" where they were not involved "in any of the post-arrest conduct that led to [plaintiff's] prosecution").

Accordingly, because Plaintiff has not alleged that the NYPD Defendants initiated Plaintiff's prosecution, the Court dismisses the malicious prosecution claim against them.

ii. Free Speech Claim

Plaintiff next asserts that Defendants violated his First Amendment right to free speech, though it is difficult to discern the precise contours of this claim. Plaintiff, who is represented by counsel, appears to be taking the position that the DANY Defendants violated his First Amendment rights by failing to give him an opportunity to testify before the grand jury. But while New York law *does* provide that individuals who face criminal charges have the right to testify before the grand jury in some circumstances, the law only requires that notice be given to individuals who have already been charged in a criminal complaint for the crime that is the subject of the pending grand jury indictment. *See* N.Y. Crim. Proc. Law § 190.50(5)(a). Thus, because Plaintiff had not previously been named in a felony complaint, he had no statutory right to be notified about the grand jury proceeding. *See, e.g.*, *People v. McNamara*, 99 A.D.3d 1248, 1249–50 (4th Dep't 2012). In any event, the fact that New York State provides certain rights to criminal defendants in grand jury proceedings does not mean that those rights are likewise guaranteed by the United States Constitution. Not surprisingly, Plaintiff has provided no authority for the proposition that the First Amendment guarantees the right of criminal defendants to testify in a grand jury. In fact, the law is clear that defendants have no such right. *See Flores v. Levy*, No. 07-cv-3753 (JFB) (WDW), 2008 WL 4394681, at *11 (E.D.N.Y. Sept. 23, 2008) ("[I]t is axiomatic that there is no constitutional right to testify before the grand jury."); *Burwell v. Superintendent of Fishkill Corr.*

*Facility*, No. 06-cv-787 (JFK), 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008). Moreover, even if such a constitutional right existed, any violation would have been committed by the DANY Defendants, against whom Plaintiff has withdrawn all claims. None of the remaining NYPD Defendants are plausibly alleged to have interfered with Plaintiff's supposed right to testify in the state grand jury. Accordingly, the Court dismisses Plaintiff's inchoate First Amendment claim on a variety of grounds.

iii. Fourth Amendment Claim

Plaintiff also asserts that Defendants violated his Fourth Amendment rights to be free from unlawful searches and seizures. Once again, Plaintiff's constitutional claim is not entirely clear, but judging from his opposition brief, he appears to be asserting that his Fourth Amendment rights were violated when he was "indicted, searched and detained multiple times, arrested and arraigned." (Doc. No. 59 at 8.) But as noted above, the Amended Complaint is bereft of any allegations that any *named* NYPD Defendants were involved in his arrest, arraignment, indictment, detention, or search. And even if Plaintiff could plead facts against the named Defendants, these claims appear to be malicious prosecution or false arrest claims masquerading as Fourth Amendment violations. This is a non-starter, since the Court has already dismissed Plaintiff's malicious prosecution claim, and Plaintiff has stated, through his counsel, that he is not bringing a false arrest claim (*see* Doc. No. 62 at 23:24).

Although the Amended Complaint does assert one September 2011 incident when police officers searched Plaintiff's backpack (FAC ¶ 61), this claim is also fatally deficient since Plaintiff does not allege that any of the named Defendants in this case were involved in the search, and, in any event, Plaintiff concedes that he gave the police officers consent to search. (*Id.*) *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) ("[O]ne of the specifically established

exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent."). Accordingly, Plaintiff has failed to allege a viable Fourth Amendment claim.

### iv. Due Process Claim

Plaintiff also asserts that the NYPD Defendants violated his right to due process.[3] Although this argument is likewise undeveloped and far from clear, it appears that Plaintiff's due process claim, like his First Amendment claim, is premised on the DANY Defendants' failure to inform Plaintiff of his right to testify before the state grand jury. (FAC ¶¶ 41, 46.) Once again, because Plaintiff has withdrawn his claims against the DANY Defendants and makes no allegations that the remaining NYPD Defendants were in any way involved with his grand jury proceedings, the Court dismisses any freestanding due process claim Plaintiff might have in this regard.

### v. Equal Protection Claim

Plaintiff next asserts a claim under the Equal Protection Clause, arguing that he was arrested and prosecuted only because he is Hispanic. In order to establish a Fourteenth Amendment selective enforcement claim, Plaintiff must "show both (1) that [he was] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on 'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (quoting *LaTrieste Rest. & Cabaret v. Vill. of Port Chester*, 40 F.3d 587, 590 (2d Cir. 1994)). Here, Plaintiff's allegation of

---

[3] While Plaintiff references both the Fifth and Fourteenth Amendments' Due Process and Equal Protection Clauses, Plaintiff only asserts claims against state officials, and thus fails to state a claim under the Fifth, which relates only to federal government action. *See, e.g.*, *United States v. Windsor*, 133 S. Ct. 2675, 2693 (2013) (citing U.S. Const., amend. V and *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).

disparate treatment is wholly conclusory. He does not allege that he was treated any differently from any similarly situated non-Hispanic individuals, and he makes no reference whatsoever to how the NYPD or DANY have handled similar cases where there are cross-complaints of assault. Without more, Plaintiff's perfunctory selective enforcement claim cannot survive a motion to dismiss.

### vi. Right to Counsel Claim

Like Plaintiff's other inchoate constitutional claims, his assertion of a denial of his Sixth Amendment right to counsel is highly conclusory and undeveloped. The Court notes that the Sixth Amendment right to counsel does not attach until a defendant's "first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 194 (2008). Accordingly, Plaintiff had no Sixth Amendment right to counsel until he was presented on the indictment and arraigned in 2013. Nevertheless, Plaintiff pleads no facts, even after the date of his arraignment, that could plausibly give rise to a Sixth Amendment denial-of-counsel claim, and the Court thus dismisses this claim as well.

### vii. Ninth Amendment Claim

Plaintiff next asserts a vague Ninth Amendment claim. That Amendment states that the "enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. The Ninth Amendment, however, does not provide any individual rights that can support a suit under Section 1983. *See Licorish-Davis v. Mitchell*, No. 12-cv-601 (ER), 2013 WL 2217491, at *10 (S.D.N.Y. May 20, 2013); *Bussey v. Phillips*, 491 F. Supp. 2d 569, 586 (S.D.N.Y. 2006); *Rini v. Zwirn*, 886 F. Supp. 270, 289–90 (E.D.N.Y. 1995); *cf. Barnett v. Carberry*, 420 F. App'x 67, 69 (2d Cir. 2011) ("Nor does the Ninth

12

Amendment provide 'an independent source of individual rights; rather, it provides a rule of construction that we apply in certain cases.'" (quoting *Jenkins v. Comm'r*, 483 F.3d 90, 92 (2d Cir. 2007))). Accordingly, Plaintiff's Ninth Amendment claim must also be dismissed.

### viii. Conspiracy

Plaintiff also alleges that Defendants were engaged in a conspiracy to deprive him of constitutional rights in violation of Section 1983. To plausibly assert a Section 1983 conspiracy claim, Plaintiff must allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Importantly, Plaintiff must allege specific instances of misconduct; "diffuse and expansive allegations are insufficient." *Ciambriello*, 292 F.3d at 325 (quoting *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993)). Here, Plaintiff once again makes only "conclusory, vague, or general allegations that . . . [D]efendants have engaged in a conspiracy," thus warranting dismissal. *Id.* But conclusory assertions aside, Plaintiff's conspiracy claim must also fail because, as set forth above, the Court has dismissed all of Plaintiff's constitutional claims asserted pursuant to Section 1983. *See, e.g.*, *Mitchell v. Cty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. 2011) ("As it has been established that there was no constitutional violation, there can be no conspiracy."). Accordingly, Plaintiff's conspiracy claim must also be dismissed.

ix. Supervisory Liability

Notwithstanding the sparse – or in the case of Donohue, non-existent – allegations of personal involvement by supervisors, Plaintiff devotes paragraphs of his Amended Complaint in an attempt to allege supervisory liability. (FAC ¶¶ 119–25.) Although there are several narrow circumstances in which a supervisor may have sufficient personal involvement in a subordinate's constitutional violation to be deemed independently liable under Section 1983, *see Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), each of these scenarios requires that a subordinate actually committed a constitutional violation in the first place. Therefore, since the Court has dismissed all of Plaintiff's Section 1983 claims, there is no basis for asserting a supervisory liability claim.

b. Section 1981 Claim

Plaintiff asserts a discrimination claim under 42 U.S.C. § 1981, arguing that Defendants intentionally mistreated him because he is a "white Hispanic." (FAC ¶¶ 127–32.) Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Establishing a Section 1981 claim requires alleging facts showing that (1) plaintiff is a member of racial minority, (2) defendants intended to discriminate on the basis of race, and (3) the discrimination concerned one of the statute's enumerated activities. *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). A claim of racial discrimination requires that the plaintiff specifically allege "circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). "'Conclusory allegations' of racially motivated

animus are insufficient." *Johnson v. City of New York*, 669 F. Supp. 2d 444, 450 (S.D.N.Y. 2009) (quoting *Yusuf*, 35 F.3d at 713).

Here, Plaintiff alleges he is Hispanic, and thus a member of a racial minority. *See Vill. of Freeport v. Barella*, 814 F.3d 594, 604–05 (2d Cir. 2016). However, Plaintiff's Section 1981 claim fails because he has not adequately pleaded the second and third elements of the claim – that is, Plaintiff offers nothing more than conclusory allegations in support of the contention that the treatment he suffered was the result of discriminatory intent. *See, e.g.*, *Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) ("A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss."); *Yusuf*, 35 F.3d at 714. Put simply, the mere allegation that Defendants are white, the Assailants are black, and Plaintiff is a "white Hispanic" is insufficient, without more, to establish discriminatory intent. *See Yusuf*, 35 F.3d at 713 (affirming dismissal of Section 1981 claim where complaint's only race-linked allegation was that plaintiff was a different race than defendants). Accordingly, Plaintiff's Section 1981 claim must likewise be dismissed.

c. Section 1985 Claim

Plaintiff also asserts a conspiracy claim under Section 1985(3). To assert such a claim, Plaintiff must plead "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, . . . ; (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown*, 221 F.3d at 341 (alterations in original) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). The conspiracy at issue must be motived by racial animus. *Id.* Here, the conspiracy claims against the NYPD Defendants fail because, as discussed above, Plaintiff has not plausibly alleged an equal protection or any constitutional violation.

15

Furthermore, he does not allege facts that would support the plausible inference that the NYPD Defendants formed the requisite agreement and committed an overt act in furtherance of that agreement, instead pinning his claims on insufficient conclusory assertions. *See Gallop v. Cheney*, 652 F.3d 364, 369 (2d Cir. 2011). Accordingly, the conspiracy claim against the NYPD Defendants must also be dismissed.

### 3. *Monell* Liability

Plaintiff also claims that, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the City, through the NYPD and DANY, is vicariously liable for Plaintiff's malicious prosecution and other constitutional violations. To state a *Monell* claim against a municipality, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). As these elements indicate, *Monell* does not provide a separate cause of action against a local government for violations under Section 1983. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Rather, "it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to" – that is, caused – an underlying "constitutional violation." *Id.* Under *Monell*, "to ensure that a municipality is not held liable solely for the actions of its employee, courts must apply rigorous standards of culpability and causation." *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05-cv-6278 (RJS), 2009 WL 804096, at *21 (S.D.N.Y. Mar. 25, 2009) (citation omitted).

As discussed above, Plaintiff has withdrawn his claims against the DANY Defendants. Furthermore, the Court has dismissed all of Plaintiff's constitutional claims against the NYPD Defendants. Accordingly, because Plaintiff has failed to plead the denial of any constitutional

16

right that could serve as the foundation for the imposition of municipal liability, the Court dismisses any *Monell* claim against the City as well.

B. State Law Claims

In addition to his federal claims, Plaintiff asserts state law claims for malicious prosecution and intentional infliction of emotional distress, as well as respondeat superior claims against the City of New York for those state law violations. These state law claims are before this Court because 28 U.S.C. § 1367 grants supplemental jurisdiction in cases where Plaintiffs have alleged both federal and state law claims. However, Section 1367 also grants district courts the power to decline supplemental jurisdiction when the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). As the Second Circuit has instructed, in most cases where all federal claims have been dismissed before trial, "the balance of factors to be considered under the [supplemental] jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well."). Because this Court has dismissed all federal question claims in this case, the Court declines to exercise supplemental jurisdiction over these state law claims and dismisses them without prejudice.

IV. CONCLUSION

In short, Plaintiff's Amended Complaint – and his brief in opposition to Defendant's motion – is a hodgepodge of conclusory and undeveloped assertions that come nowhere close to alleging the facts necessary to support *any* of Plaintiff's claims. Accordingly, for the reasons set

forth above, the Court GRANTS Defendants' motion to dismiss the Amended Complaint in its entirety. The Clerk of Court is respectfully requested to terminate the motion pending at docket number 56 and close this case.

SO ORDERED.

Dated: September 20, 2017
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/20/17